## SORENSIN *et al. v.* KEYSER.[1]

*(District Court, S. D. Mississippi. September 21, 1891.)*

DEMURRAGE—EXCEPTIONS IN CHARTER-PARTY.

Where a charter-party allows a certain number of days for delivery of a cargo, and excludes from computation therein all time lost by reason of flood, drought, storm, and any extraordinary occurrence beyond control of the charterer, and the charterer fails to deliver his cargo within such time because of storms and a drought which affects the river, which is the main source of supply at the port of loading, he is not liable for demurrage. *Paterson* v. *Dakin,* 31 Fed. Rep. 682, followed, and *Grant* v. *Coverdale,* L. R. 9 App. Cas. 470, distinguished.

In Admiralty. Libel *in personam.*

*Rouse & Grant,* for libelants.

*Ford & Ford* and *John C. Avery,* for respondent.

TOULMIN, J. This is a libel *in personam* for demurrage. The libelants are the owners of the bark Urania, which had been chartered to receive on board at Ship island a cargo of timber. By the charter-party the charterer undertook to deliver the cargo at port of loading in 27 working days, which were allowed him for "actual delivery of cargo along-side." The charter-party stipulates that in the computation of the days for delivering the cargo shall be excluded any time lost by reason of drought, floods, storms, or any extraordinary occurrence beyond the control of the charterer. Notice of the ship's readiness to receive cargo was given on January 7, 1890, and the lay-days stipulated for would have expired February 12, 1890. Delivery of cargo began on February 11, 1890, and was not completed until March 30, 1890. The defense is that by reason of drought and storms delivery of cargo was delayed, and that all the time lost was by reason of these extraordinary occurrences, beyond the control of defendant; and that, excluding such lost time in the computation of the days allowed for delivering the cargo, 27 working days were not consumed in delivering the cargo at the port of loading. The evidence in this case is without conflict. It shows that, according to the custom and usual course of business, vessels chartered for Ship island obtain timber for their cargoes from the Pascagoula river and its tributaries by way of Moss point. It shows that when timber is brought for such cargoes from Mobile and other points it is for some exceptional reason, and is done at extraordinary risk and expense. It shows that prior to the chartering of the bark Urania the defendant had purchased and contracted to purchase much more timber than was required to load her and the other vessels he had chartered for Ship island at and about the same time, and that the delay in the delivery to the vessel of the cargo contracted for was by reason of an extraordinary drought that prevailed throughout the extent of country, affecting the rivers and streams from which the intended cargo was to be obtained; that this drought prevailed for several months before the arrival of the

[1] Reported by Peter J. Hamilton, Esq., of the Mobile bar

vessel, and continued for some time after her arrival; and also that some time was lost by reason of storms that prevailed during the laying days of the vessel.

The question presented in this case, and the only real issue raised in it, was considered and passed on in the case of *Paterson* v. *Dakin*, 31 Fed. Rep. 682. The facts of the two cases are about identical. I have seen no reason to change the views expressed in *Paterson* v. *Dakin*, and I cite the opinion in that case to sustain the conclusion reached by me in this one,—that under the exceptions in the charter-party, and on the other proof in the case, the defendant is not liable for the demurrage claimed. The proctors for libelants have referred to the case of *Grant* v. *Coverdale*, L. R. 9 App. Cas. 470, as holding a different view from that expressed in *Paterson* v. *Dakin*. I have carefully examined the case of *Grant* v. *Coverdale*, and I think that it is clearly distinguishable from the case at bar. In the one case the charter-party provides that "time to commence from the vessel being ready to load and unload, and ten days on demurrage over and above the said lay-days at £40 a day, (except in case of hands striking work or frosts or floods or any other unavoidable accidents preventing the loading, in which case owner to have the option of employing the steamer in some short voyage trade,)" etc. There the exception is limited to accidents preventing the "loading,"—the actual putting on board of the cargo,—the very act of loading. As said by a member of the court: "The exception applies only where the accident prevents the loading, and not where it prevents or retards the transit or conveyance of the cargo to the place of loading." There the shipper took on himself all the risks consequent upon delay in transit. In the other case (the one now before the court) the charter-party provides that 27 working days are to be allowed in which to deliver cargo at the port of loading, which is understood to mean "actual delivery of cargo along-side;" and that in the computation of the days allowed for delivering the cargo shall be excluded any time lost by reason of drought, floods, storms, or any extraordinary occurrence beyond the control of the charterers. The exception here applies where the accident or extraordinary occurrence prevents the delivering the cargo,—where such occurrence prevents or retards the transit or conveyance of the cargo to the place of loading. It is apparent that this exception was put in the contract for the benefit and protection of the charterer, and that he took on himself no risks consequent upon delay in transit or conveyance caused by drought, floods, storms, or any extraordinary occurrence beyond his control. In *Hudson* v. *Ede*, 8 Best & S. 631, "the charterer was bound to load in 30 days, detention by ice excepted; and detention in the river Danube many miles above the port excused him, though the port itself was free; it being usual to rely on the river for transportation." In that case the court say that the exception in a charter-party, whereby a certain number of lay-days is allowed to the charterer, but detention by ice is not to be reckoned as such, applies where the ice not only renders access to the ship impracticable in the port itself, but blocks up a river by means of which alone the in-

tended cargo can be conveyed to the port. *Hudson* v. *Ede, supra,* affirmed in L. R. 3 Q. B. 412; *Eleven Hundred Tons of Coal,* 12 Fed. Rep. 185. As I am of opinion that the issue must be found for the defendant, there will be an order entered dismissing the libel at libelants' cost.